# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF NEW MEXICO

UNITED STATES OF AMERICA,

    Plaintiff,

vs.  No. CR 03–2365 JB

DANIEL SHADOWHAWK FOGHORN,

    Defendant.

## MEMORANDUM OPINION AND ORDER

**THIS MATTER** comes before the Court on: (i) the Defendant's Objections to Pre-Sentence Report, filed February 22, 2006 (Doc. 228)("Foghorn's Objections"); and (ii) the United States' Sentencing Memoranda and Response to Defendant's Sentencing Objections Filed February 22, 2006, filed December 12, 2006 (Doc. 241)("United States' Memorandum").  The Court held a sentencing hearing in this matter on January 4, 2007.  The primary issues are: (i) whether Defendant Daniel Shadowhawk Foghorn is entitled to a reduction in his base offense level for acceptance of responsibility after he was found guilty of second-degree murder and kidnaping in his retrial; and (ii) whether the Court should enhance Foghorn's sentence for obstruction of justice.  For reasons given at the sentencing hearing on January 4, 2007, for reasons consistent with the reasons given at that time, because the Court does not believe that Foghorn has accepted responsibility for the murder and kidnaping with which he was convicted, and because the Court does not believe that Foghorn's statements and testimony rise to the level of an obstruction of justice, the Court will overrule Foghorn's objections in part and sustain them in part.

**PROCEDURAL BACKGROUND**

On November 20, 2003, a United States grand jury returned an Indictment charging Foghorn, Trevor Nez, and Erickson Tso with the first-degree murder of Paul Williams. See Indictment, filed November 20, 2003 (Doc. 9). Nez and Tso each entered into plea agreements with the United States, and on August 25, 2004, the grand jury returned a Superceding Indictment against Foghorn. The Superceding Indictment charged Foghorn with: (i) first-degree murder in violation of 18 U.S.C. § 1111; (ii) kidnaping resulting in death in violation of 18 U.S.C. § 1201(a)(2); (iii) preventing the communication of a crime to law enforcement in violation of 18 U.S.C. § 1512(a)(1)(C); and (iv) hindering, delaying, and preventing the communication of a crime to law enforcement in violation of 18 U.S.C. § 1512(a)(2)(C). See Superceding Indictment at 1-3, filed August 25, 2004 (Doc. 76). Foghorn was also charged with aiding and abetting each crime in violation of 18 U.S.C. § 2. See id.

The Court conducted a jury trial from October 22, 2004 through October 29, 2004. See Clerk's Minutes, filed October 22, 2006 (Doc. 119). On October 29, 2004, the jury returned a verdict finding Foghorn not guilty on Count 1 (first-degree murder), Count 3 (preventing the communication of a crime to law enforcement), and Count 4 (hindering, delaying, and preventing the communication of a crime to law enforcement) of the Superceding Indictment. See Verdict at 1-2, filed October 29, 2004 (Doc. 120)("First Verdict"). The jury was not able to reach a verdict on Count 1's lesser included offenses, second-degree murder and voluntary manslaughter, or on Count 2, kidnaping. See id.

On November 24, 2004, the United States filed its Second Superceding Indictment, charging Foghorn with second-degree murder and kidnaping resulting in death. See Second Superceding Indictment, filed November 24, 2004 (Doc. 128). Count 1 charged Foghorn with killing Williams

"with malice aforethought[,] willfully, deliberately, maliciously, and unlawfully," and "aid[ing], abet[ting], counsel[ling], command[ing], and induc[ing] the commission of the killing of" Williams in violation of 18 U.S.C. § 1153 (offenses committed in Indian country), 18 U.S.C. § 1111 (murder), and 18 U.S.C. § 2 (aiding and abetting). Id. at 1. Count 2 charged that Foghorn "did unlawfully, seize, confine, kidnap and carry away . . . Williams . . . for the purpose of assaulting him and removing him from the location of the original contact," and that those actions resulted in Williams' death. Id. at 2.

At Foghorn's second trial, the jury found that the United States proved Foghorn guilty beyond a reasonable doubt of second-degree murder and kidnaping. See Verdict, filed July 27, 2005 (Doc. 200). On August 22, 2005, Foghorn filed a Motion for Judgment of Acquittal, pursuant to rule 29(c) of the Federal Rules of Criminal Procedure, asking the Court to enter a judgment of acquittal on both counts -- Counts 1 and 2 -- of the Second Superceding Indictment. See Defendant's Motion for Judgment of Acquittal, filed August 22, 2005 (Doc. 210)("Motion for Acquittal"). The Court issued its opinion denying Foghorn's Motion for Judgment of Acquittal on October 20, 2006. See Memorandum Opinion and Order, filed October 20, 2006 (Doc. 240). Foghorn submits to the Court his objections to the Presentence Investigation Report ("PSR") that the United States Probation Office ("USPO") prepared. Foghorn also asks the Court to grant leave to file a sentencing memorandum after the Court decides his Motion for Judgment of Acquittal. Because Foghorn has not submitted a sentencing memorandum at this time, the Court will dismiss that portion of his request as moot.

## ANALYSIS

Foghorn makes objections to four items in the PSR. The first two objections are now moot,

because the USPO issued its Second Addendum adding the material that Foghorn requested and correcting a factual error. The Court concludes that the USPO correctly declined to reduce Foghorn's offense level for acceptance of responsibility, but incorrectly enhanced Foghorn's offense level for obstruction of justice.

## I.     THE SECOND ADDENDUM PROVIDES INFORMATION ABOUT THE FIRST TRIAL.

Foghorn requests information regarding his first trial be included in the PSR's Charges and Convictions section. See Foghorn's Objections ¶ 1, at 1. Foghorn requests that the following information be added to the PSR: (i) information revealing that he was tried before a jury from October 22, 2004 through October 29, 2004; (ii) that the jury returned a verdict finding Foghorn not guilty of first-degree murder, preventing the communication of a crime to law enforcement, and hindering, delaying, and preventing the communication of a crime to law enforcement, and was unable to reach a verdict as to the lesser included offenses of second-degree murder and voluntary manslaughter, and on one count of kidnaping. See id. Foghorn asks that this information should be inserted on page 4 between paragraphs 7 and 8.

The USPO added this information to the revised PSR, which it redisclosed to all parties. See Second Addendum to the Presentence Report at 1 ("Second Addendum"). Accordingly, the Court will overrule this objection as moot.

## II.    THE USPO HAS CORRECTED PARAGRAPH 25.

Foghorn contends that, in the first sentence of paragraph 25 on page 6 of the PSR, the statement is incorrect in that it was Trevor Nez, not Daniel Foghorn, who informed Erickson Tso about the altercation between Nez and the victim, Paul Williams. See Foghorn's Objections ¶ 2, at 1. This information is corrected in the revised PSR, which the USPO has re-disclosed to all parties.

See Second Addendum at 1.  Accordingly, the Court will overrule this objection as moot.

## III. FOGHORN IS NOT ENTITLED TO A REDUCTION FOR ACCEPTANCE OF RESPONSIBILITY.

While it is certainly possible for a defendant to accept responsibility and go to trial, these circumstances are rare.  With respect to his conviction for second-degree murder, Foghorn did not concede the factual element of causation, and thus did not accept responsibility for murdering Williams.  With respect to his conviction for kidnaping, Foghorn contested that he transported Williams for a criminal purpose, and thus did not accept responsibility for kidnaping.

### A. LAW REGARDING ACCEPTANCE OF RESPONSIBILITY.

A defendant is entitled to a two-level reduction in his offense level "[i]f the defendant clearly demonstrates acceptance of responsibility for his offense."  U.S.S.G. § 3E1.1(a).  Upon the United States' motion, a defendant may be entitled to an additional one-level reduction if the United States asserts that the defendant has assisted authorities in its investigation or prosecution "by timely notifying the authorities of his intention to enter a plea of guilty, thereby permitting the government to avoid preparing for trial and permitting the government and the court to allocate their resources efficiently."  U.S.S.G. § 3E1.1(b).  The reduction for acceptance of responsibility "is not intended to apply to a defendant who puts the government to its burden of proof at trial by denying the essential factual elements of guilt, is convicted, and only then admits guilt and expresses remorse."  U.S.S.G. § 3E1.1 cmt. n.2.

A defendant who exercises his right to trial and is convicted is not automatically precluded from receiving an acceptance of responsibility adjustment.  See id.; United States v. Wooten, 377 F.3d 1134, 1146 (10th Cir. 2004). When a defendant goes to trial to litigate and preserve issues not related to factual guilt, such as the constitutionality of a criminal statute or the applicability of a

particular statute to the defendant's conduct, he may still be eligible for an adjustment based on his pre-trial conduct and statements. See United States v. Salazar-Samaniega, 361 F.3d 1271, 1280-81 (10th Cir. 2004). Nevertheless, the United States Court of Appeals for the Tenth Circuit has explained that, although possible, "[o]ur cases make . . . clear that acceptance of responsibility adjustments after trial are very rare." United States v. Sims, 428 F.3d 945, 961 (10th Cir. 2005).

In United States v. Aguayo-Gonzalez, 472 F.3d 809 (10th Cir. 2007), the Tenth Circuit considered the appeal of a defendant who had been convicted on two felony counts -- illegal reentry after conviction of an aggravated felony in violation of 8 U.S.C. § 1326(a) and 1326(b)(2), and making a false citizenship claim in violation of 18 U.S.C. § 911 -- and one misdemeanor count of assaulting, resisting, or impeding a felony officer in violation of 18 U.S.C. § 111. At trial, the defendant conceded the factual allegations of the two felony charges, but contested the misdemeanor charge. See id. at 810-11. In preparation for sentencing, the presentence report grouped the two felonies together at an offense level of twenty-four, and grouped the misdemeanor separately with an offense level of nine. Because the defendant's offense level for the misdemeanor conviction was fifteen levels lower than the offense level for his felonies, the district court disregarded the misdemeanor and sentenced the defendant entirely on the first two charges. See id. at 811; U.S.S.G. § 3D1.4(c) (instructing that a sentencing court should disregard any group that is nine or more levels less serious than the offense group with the highest offense level).

The district court in United States v. Aguayo-Gonzalez denied the defendant a reduction of responsibility under the Guidelines because he had contested the misdemeanor charge. See United States v. Aguayo-Gonzalez, 472 F.3d at 811. Although the Tenth Circuit did not consider whether this was an appropriate application of the Guidelines -- because the defendant had not challenged

the district court's calculations under the Guidelines -- it did acknowledge that "[p]recedent in other circuits is fractured on whether a defendant must accept responsibility for all charged crimes, or merely all crimes in a given Guidelines grouping, in order to receive a reduction." Id. at 811 n.3. The Tenth Circuit cited four other Circuit Courts of Appeal that have held a defendant must accept responsibility for all charged conduct before he is entitled to a reduction, but recognized that none of those four cases involved a defendant who had pled guilty to charges within one guideline grouping and contested charges in another. See id. (citing United States v. Thomas, 242 F.3d 1028, 1033-34 (11th Cir. 2001); United States v. Chambers, 195 F.3d 274, 278-79 (6th Cir. 1999); United States v. Ginn, 87 F.3d 367, 370-71 (9th Cir. 1996); United States v. Kleinebreil, 966 F.2d 945, 952-53 (5th Cir. 1992)).  The Tenth Circuit also cited two Circuit Courts of Appeal that had explicitly addressed the question before it, and held that a defendant who pleads guilty to one set of grouped charges and contests a separate group of charges is entitled to the acceptance of responsibility reduction.  See United States v. Aguayo-Gonzalez, 472 F.3d at 811 n.3 (citing United States v. Wattree, 431 F.3d 618, 621-23 (8th Cir. 2005); United States v. Williams, 344 F.3d 365, 379-80 (3d Cir. 2003)).

A district court's decision to deny an adjustment for acceptance of responsibility to a defendant is reviewed for clear error. See United States v. Sarracino, 340 F.3d 1148, 1173 (10th Cir. 2003). The Guidelines recognize that the sentencing court "is in a unique position to evaluate a defendant's acceptance of responsibility," and, therefore, the district court's determination that a defendant is not entitled to an adjustment for acceptance of responsibility "is entitled to great deference on review." U.S.S.G. § 3E1.1 cmt. n.5. See United States v. Loza, 184 Fed. Appx. 772, 775 (10th Cir. 2006)("We give 'great deference' to the district court's determination whether a

defendant accepted responsibility.").

### B. FOGHORN HAS NOT ACCEPTED RESPONSIBILITY FOR THE CRIMES CHARGED.

The USPO has grouped Foghorn's two counts of conviction, because they involve the same victim and the same act or transaction. See PSR ¶ 54, at 12 (citing U.S.S.G. § 3D1.2(a)). Foghorn objects to paragraphs 52 and 61 of the PSR, contending that he should be granted a reduction in his offense level for acceptance of responsibility, because at trial he acknowledged his participation in the brutal treatment of Williams and expressed remorse for his actions. See Foghorn's Objections ¶ 3, at 1-2. Foghorn contends that he conceded all material facts, but that his defense at trial was that his actions did not cause the death of Williams. See id. ¶ 3, at 2. Foghorn characterizes the question whether his actions were the cause of Williams' death as a "technical medical defense" that does not undermine his admission of the factual allegations that the United States raised and does not waive his entitlement to the reduction for acceptance of responsibility under U.S.S.G. § 3E1.1(a). See Foghorn's Objections ¶ 3, at 2. Foghorn relies on two cases from the Tenth Circuit, United States v. Gauvin, 173 F.3d 798, 806 (10th Cir. 1999), and United States v. Garcia, 182 F.3d 1165 (10th Cir. 1999), and two cases from other circuits, United States v. Guerrero-Cortez, 110 F.3d 647 (8th Cir. 1997), and United States v. Broussard, 987 F.2d 215 (5th Cir. 1993). See Foghorn's Objections ¶ 3, at 2.

First, the Court is not convinced that Foghorn is entitled as a matter of law to the reduction for acceptance of responsibility. Foghorn contested factual elements of his kidnaping charge. The USPO grouped the two convictions together, and Foghorn has not made any objection to this grouping. The parties have not cited, and the Court has not discovered in its independent research, any case holding that a defendant can contest one crime in a grouping and still accept responsibility

for that grouping.

The kidnaping statute, 18 U.S.C. § 1201, requires the United States to prove that the defendant kidnaped the victim for some purpose. See 18 U.S.C. § 1201(a). While Foghorn may have admitted many of his actions regarding seizing and moving Williams, he argued at trial that he, along with Nez and Tso, did not kidnap Williams for an improper purpose. To the contrary, Foghorn argued that the seizure and transport of Williams was not for the captors' benefit, but to provide Williams assistance in being rescued.

Foghorn reasserted this argument in his post-trial motions contending that the United States' witnesses failed to establish beyond a reasonable doubt that Foghorn, along with Nez and Tso, kidnaped Williams for some purpose or benefit. Foghorn required the United States to prove his factual guilt and refused to take full responsibility for kidnaping Williams. He is not entitled to a reduction in his offense level for acceptance of responsibility on the kidnaping charge and thus in his base offense level.

Second, the Court is not persuaded that Foghorn has met his burden to show, by a preponderance of the evidence, that he is entitled to this reduction for his second-degree murder conviction, even if the Court can or should ignore what he did on the kidnaping charge. Foghorn certainly acknowledged responsibility for some of his actions, and expressed remorse for some of his actions and for their consequences, but, at the same time, he continues to contest essential elements of the crimes of both murder and kidnaping with which he was charged. Moreover, the Court is not convinced that Foghorn's defense at trial to murder was merely a technical medical defense and not a factual defense.

Foghorn admits that he participated in the second beating of Williams and that he did nothing

-9-

to ensure that Williams received medical attention, even though he knew Williams was seriously hurt. See Transcript of Trial at 41:25-42:11 (Foghorn)(taken July 27, 2005)("July 27 Transcript"). He does not contest the United States' facts regarding the brutal treatment of Williams at his hands.

Foghorn testified that he arrived at the scene where Williams lay injured; he evaluated the situation and realized that Williams was seriously injured. See Transcript of Trial at 302:25-303:3 (Foghorn)(taken July 26, 2005)("July 26 Transcript"). He acknowledged that he knew that Williams was alive and aware of his surroundings, and that Williams knew the identity of at least one his attackers. See id. at 308:10-18. Foghorn admitted that, instead of leaving the scene or acting to assist Williams, he joined Nez and Tso in beating Williams, stripping him of his clothes, and covering him in beer and urine. See id. at 304:11-308:9; July 27 Transcript at 28:17-19 (Foghorn). Foghorn does not dispute that Williams sustained numerous additional injuries at the hands of Foghorn, including continued exposure to the elements. See Transcript of Sentencing Hearing at 31:6-9 (Adrian)(taken January 4, 2007).[1]

Foghorn testified that when he, Nez, and Tso finished beating Williams, they loaded him into the open back of Foghorn's pickup truck. See July 26 Transcript at 312:4-8 (Foghorn). Foghorn conceded that, despite that he was wet from blood, beer, and urine, the men did not fully redress Williams, but placed him in the truck without his shirt or boots. See id. at 311:25-312:2. Foghorn indicated that he then drove Williams away from the crime scene and left him abandoned by the side of the road to die. See id. at 316:1-5. Foghorn testified that he continued to drive for some time, making stops at Nez' girlfriend's house and a twenty-four hour gasoline station. See July 27

---

[1] The Court's citations to the transcript of the sentencing hearing refer to the Court Reporter's original, unedited version. Any final transcript may contain slightly different page and/or line numbers.

Transcript at 41:5-14 (Foghorn).  Foghorn acknowledged that he knew that the gas station had a telephone, but at no time did he call for emergency medical services or make any other attempt to assist Williams.  See id. at 41:15-24.

While Foghorn admits that he participated in the brutal treatment and beating of Williams, he never has acknowledged that he participated in the brutal beating death of Williams or clearly admitted the facts about the dumping of the body.  The Court does not believe that Foghorn's testimony was sufficiently comprehensive to cover all the elements of the crimes with which he was charged, and notes that, to the extent he made admissions, they did not occur early in the United States' investigative and prosecutorial process.  Moreover, even after his conviction, Foghorn continues to assert that his actions did not cause Williams' death; causation is a factual element that the United States must establish to convict a defendant for murder.  Foghorn's post-trial motion for acquittal asserted that the evidence was not sufficient for a reasonable jury to find that Foghorn caused Williams' death.  See Defendant's Motion for Acquittal.  Indeed, even in his argument in support of his objections to the PSR, Foghorn continues to protest that his actions did not cause Williams' death.  Because Foghorn required the United States to prove his factual guilt and refused to take full responsibility for the offenses of which he was convicted, he is not entitled to a reduction in his offense level for acceptance of responsibility.

### C. THE COURT WILL NOT ENHANCE FOGHORN'S OFFENSE LEVEL FOR OBSTRUCTION OF JUSTICE PURSUANT TO U.S.S.G. § 3C1.1.

The USPO recommended that the Court add two levels to Foghorn's base offense level for obstruction of justice pursuant to U.S.S.G. § 3C1.1.  See PSR ¶ 59, at 13.  The USPO asserts that Foghorn's testimony at trial was inconsistent with accounts he had previously provided to FBI agents during the investigation of the crime in this case.  Specifically, the USPO notes that, during the

investigation of this case, Foghorn told FBI agents that, when Williams, Foghorn, Nez, and Tso arrived at the intersection near Two Grey Hills Trading Post, he pulled Williams out of his pickup truck by his feet, and Williams' body and head hit the ground. In his sworn trial testimony, Foghorn repeated much of what he had previously told the FBI agents, but added some additional information regarding Williams' condition just before Foghorn, Nez, and Tso abandoned him. Foghorn stated for the first time that, when he pulled Williams out of the pickup, Williams reached down to catch himself rather than allow his head to hit the ground.

The Court believes that this testimony is material, and that Foghorn may have been attempting to portray the evidence at trial in the light most favorable to him, but is not convinced by a preponderance of the evidence that Foghorn offered false testimony at trial. The statements that Foghorn made to the FBI and those he made at trial are somewhat different, but they can be reconciled. Accordingly, for reasons given at the sentencing hearing on January 4, 2007, for reasons consistent with the reasons given at that time, and because the Court does not find by a preponderance of the evidence that Foghorn gave false testimony regarding material issues at trial, the Court will sustain his objection, and will not apply a two-level enhancement to his offense level pursuant to U.S.S.G. § 3C1.1.

**IT IS ORDERED** that the Defendant's Objections to Pre-Sentence Report are sustained in part, overruled in part, and dismissed as moot in part.

_____
UNITED STATES DISTRICT JUDGE

*Counsel:*

David C. Iglesias
  United States Attorney
Paula G. Burnett
Glynette Carson-McNabb
  Assistant United States Attorneys
United States Attorney's Office
District of New Mexico
Albuquerque, New Mexico

    *Attorneys for the Plaintiff*

D. Penni Adrian
Adrian & Associates PC
Albuquerque, New Mexico

    *Attorneys for the Defendant*